# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHERYL D. BARNES, | ) |
|       Plaintiff, | ) |
| | ) |
|     v. | ) Case No. 1:13-cv-0092-TWP-MJD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Cheryl D. Barnes ("Ms. Barnes"), requests judicial review of the final decision of the Commissioner of the Social Security Administrator (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Ms. Barnes filed her applications for DIB and SSI on May 25, 2010, alleging a disability onset date of May 25, 2010. These claims were initially denied on August 9, 2010, and upon reconsideration on October 7, 2010. Thereafter, Ms. Barnes requested a hearing, which was held on August 24, 2011, before Administrative Law Judge John H. Metz ("the ALJ"). On September 2, 2011, the ALJ denied Ms. Barnes' applications, and the Appeals Council denied review on December 4, 2012, thus making it the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R § 416.1481. On January 15, 2013, Ms. Barnes filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

**B.     Factual and Medical Background**

Ms. Barnes was fifty five (55) years old at her alleged onset in May 2010. She has a myriad of physical problems, many of which stem from her obesity; she is 5'4" and weighs about 280 pounds. She has a high school education and worked as an accounts receivable bookkeeper for nearly twenty years. Most recently, she was a credit collection manager from 2000 to 2009, after which she no longer worked claiming a disability onset date of May 25, 2010.

Ms. Barnes lives with her husband and uses a wheelchair or a walker to get around. She has consistent pain in her lower back and neck, suffers from chronic obstructive pulmonary disease, hypertension, rheumatoid arthritis, diabetes mellitus, and a partial Achilles tendon rupture. She also reports having crying spells daily, occasional headaches, and arthritis in her hands and fingers. At home she dresses herself, occasionally cooks, bathes daily, does most of the grocery shopping, drives herself, pays bills online, and helps with the laundry.

Over the past decade Ms. Barnes has seen dozens of doctors and has been in and out of the hospital on several occasions. These various doctor visits have firmly established that Ms. Barnes suffers from several severe physical impairments, many of which are not contested here. The medical findings at issue here relate to Ms. Barnes' mental impairments, ability to handle stress, and her ability to perform daily tasks.

On July 14, 2010, Ms. Barnes was given a psychological evaluation by Dr. Alfred R. Barrow ("Dr. Barrow"), a social security psychologist. He concluded that, while Ms. Barnes presented symptoms of depression, her mental capacity for abstraction, memory functioning, concentration, formal judgment, computational ability, and comprehension were adequate. He

further concluded that Ms. Barnes functioning was adequate despite her depression and she was capable of managing her funds independently without supervision.

Donna Unversaw, Ph.D. ("Dr. Unversaw") completed the Psychiatric Review Technique form on July 26, 2010. In her rating of Ms. Barnes' functional limitations, Dr. Unversaw identified Ms. Barnes' daily living restrictions as "mild." Furthermore, she found that Ms. Barnes had no severe psychiatric impairments, no difficulties in maintaining social function, no difficulties in concentration, persistence or pace, and no episodes of decompensation. She concluded that the intensity of the symptoms Ms. Barnes reported were not consistent with the totality of the evidence.

The next day, Ms. Barnes was administered a pulmonary function test by Dr. Doug Poplin ("Dr. Poplin"). Dr. Poplin found that Ms. Barnes was morbidly obese, but had no limitations in meeting the demands of the examination. He concluded that Ms. Barnes had a mildly decreased ability to perform fine motor tasks, but did not comment on her mental condition or her ability to perform daily tasks.

On July 30, 2010, Dr. J.V. Corcoran ("Dr. Corcoran") completed the Physical Residual Functional Capacity Assessment form. He found that Ms. Barnes was capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing or walking for six hours in an eight hour work day, and sitting for six hours. He also concluded that Ms. Barnes had some limitations in her fine motor skills. On October 5, 2010, Dr. Joelle Larsen reviewed the findings of Dr. Unversaw and affirmed them as accurate. On October 7, 2010, Dr. J. Sands reviewed the findings of Dr. Corcoran and also affirmed them as accurate.

On August 16, 2011, Dr. Abboud Kawak ("Dr. Kawak"), the pulmonologist who had treated Ms. Barnes on many occasions, completed a Pulmonary Residual Functional Capacity

3

Questionnaire. Dr. Kawak stated that Ms. Barnes' pain and other symptoms would constantly interfere with her concentration and attention. The doctor further concluded that Ms. Barnes was incapable of performing low-stress jobs, could not sit for more than fifteen minutes without needing to get up, could not stand for more than five minutes without needing to sit down, and could neither sit nor stand for more than two hours in an eight hour work day. In addition, Dr. Kawak stated that Ms. Barnes could never lift ten pounds in a competitive work situation and would miss more than four days each month if working.

On October 11, 2011, Dr. Mary Beth Hensley ("Dr. Hensley"), Ms. Barnes' primary care physician for the preceding six to nine months, wrote a statement regarding Ms. Barnes. Dr. Hensley wrote that Ms. Barnes was unable to work any longer and should be considered for disability benefits. Dr. Hensley described this written statement as a letter advocating that Ms. Barnes is unable to work and should be on disability. She further opined that she was "a bit disgusted and frustrated" at a letter Ms. Barnes had received regarding her Social Security Disability benefits.

Lastly, Dr. Lee Fischer ("Dr. Fischer") was the medical expert who testified at trial after reviewing all of Ms. Barnes' medical evidence. Dr. Fisher opined that Ms. Barnes could sit for six hours in an eight hour day and walk for thirty minutes. He testified that he did not believe the medical evidence supported the severe restrictions recommended by family physician, Dr. Hensley or pulmonologist, Dr. Kawak; because diagnostic testing reflected only mild obstructive pulmonary disease. Dr. Fischer further testified that there was no documentation in the record that would support Dr. Kawak's finding that Ms. Barnes would miss four or more days of work every month.

### C. The ALJ's Decision

The ALJ made the following findings as part of his decision. At step one, the ALJ determined that Ms. Barnes has not engaged in substantial gainful activity since May 25, 2010. At step two, the ALJ found that Ms. Barnes has the following severe impairments: low back and neck pain, chronic obstructive pulmonary disease, obesity, hypertension, rheumatoid arthritis, diabetes mellitus, and a partial Achilles tendon rupture. The ALJ determined that Ms. Barnes has only mild limitations in the activities of daily living, and no limitations in social functioning, concentration, persistence, or pace, nor any episodes of decompensation. At step three, the ALJ found that Ms. Barnes does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Barnes has the residual functional capacity ("RFC") to perform sedentary work as defined in CFR 404.1567(a) except she can never crawl, squat or kneel, and must be allowed to change positions for five minutes every hour if needed. At step four, the ALJ concluded that Ms. Barnes is capable of performing her past relevant work as an accounts receivable bookkeeper and credit and collections manager concluding that this work does not require performance of work related activities precluded by Ms. Barnes' RFC. At step five, the ALJ found that Ms. Barnes is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore concluded Ms. Barnes is not disabled.

## II. DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected

to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1); 423(d)(1)(A); 1382c(a)(3)(A). The SSA has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.*

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his RFC will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3) (G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his

analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir. 1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision . . . the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

### III. DISCUSSION

In her appeal, Ms. Barnes raises two issues. First, Ms. Barnes argues that the ALJ failed to adequately account for her mental impairments, her ability to handle stress in the workplace, and her limitations on daily living. Ms. Barnes also argues that the ALJ concluded that she could perform her past relevant work without sufficiently articulating the demands of this work. Ms. Barnes argues that these are reversible errors and requests that the Court either remand the case to the Commissioner for an award of benefits or, in the alternative, reverse the denial of her claims and remand the case for further administrative proceedings.

**A. The ALJ's residual function capacity assessment accurately reflected the medical evidence regarding Ms. Barnes' mental impairments, her ability to handle stress in the workplace, and her abilities to perform the activities of daily living.**

Ms. Barnes argues that the ALJ is guilty of "omitting evidence and painting an incomplete picture" of Ms. Barnes' mental impairments, failing to "discuss Ms. Barnes' ability

to handle stress in the workplace," and "ignor[ing] the record" regarding her ability to carry on daily activities. Dkt. 14 at 13, 14, 16. Although Ms. Barnes presents these claims as three separate issues they are all essentially arguing the same thing: the ALJ's RFC omitted critical information about Ms. Barnes' condition thus making her appear more capable of working than she actually is.

The RFC "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments." SSR 96-8p. When making the RFC, the ALJ must "evaluate every medical opinion" regardless of its source and then weigh these opinions using several factors such as the relationship between the doctor and the patient, the length and frequency of the treatment, supportability, consistency, and specialization. 20 CFR § 404.1527.

Ms. Barnes asserts that the medical evidence that she has "major depression" and is incapable of working at even "low stress jobs" was omitted from the ALJ's RFC. Dkt. 14 at 12. However, as the ALJ explained, these restrictions were intentionally omitted because they were not deemed credible. Tr. at 68. Therefore, Ms. Barnes is asking this Court to reverse the ALJ's credibility finding which will only be done if the credibility finding lacks explanation or support. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

First, much of the medical evidence Ms. Barnes relies on is testimony provided by medical experts speaking outside of their area of expertise. The only medical experts that testified that Ms. Barnes' mental condition and ability to handle stress were so severely impaired that she is incapable of working were Dr. Hensley and Dr. Kawak, a family physician and pulmonologist, respectively. Both of these doctors stated their belief that Ms. Barnes is unable to work, and Dr. Hensley even labeled Ms. Barnes as "extremely disabled." Tr. at 930, 938.

9

Deciding whether Ms. Barnes is able to work or is disabled, however, is specifically reserved for the Commissioner, not expert medical witnesses. SSR 96-5p. It is reasonable that the ALJ did not afford great deference to the opinions of these experts because "the ALJ is under no duty to respect expert opinions that are given outside a witness' field of expertise." *Scmidt v. Apfel*, 201 F.3d 970, 973 (7th Cir. 2000). The ALJ had no obligation to afford any deference to these opinions, and therefore this Court does not deem the ALJ's credibility determination "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

Further, several medical experts directly contradicted these doctors' testimonies. Psychologist Dr. Barrow performed an extensive "mental status evaluation" and did not find the severe limitations described by Dr. Hensley or Dr. Kawak. Tr. at 761. Dr. Unversaw found that Ms. Barnes had no severe medical impairments, no impairment in her concentration, and had only mild restrictions on her daily life. Tr. at 762, 772. Her findings were later corroborated by Dr. Larsen. Tr. at 812. Dr. Corcoran found that Ms. Barnes could stand or walk for six hours in an eight hour work day, and could sit for the same amount of time. Tr. at 787. His findings were later supported by Dr. Sands. Tr. at 813. Lastly, Dr. Fischer, the medical expert who reviewed all of Ms. Barnes' medical evidence, clearly stated her belief that the medical evidence does not support the severe restrictions prescribed by Dr. Kawak. Tr. at 72. In fact, when asked whether the medical evidence supported Dr. Hensley's finding that Ms. Barnes "can't work at all," Dr. Fischer responded "no." Tr. at 72.

The testimony regarding Ms. Barnes' daily activities suffers from similar inconsistencies. Ms. Barnes argues that the ALJ "ignored the record" stating that she must use a chair or electric cart when cooking or grocery shopping. Dkt. 14 at 16. However, the ALJ's credibility determination regarding Ms. Barnes' daily activities was supported by substantial evidence. Dr.

Fischer testified that despite Ms. Barnes' use of a walker or wheelchair, the medical evidence suggests there is no medical need for their use. Tr. at 69. In fact, Dr. Barrow found that Ms. Barnes bathes daily, does "most of the cooking," and goes grocery shopping. Tr. at 758. She also drives herself, helps with the laundry, and pays her bills online. Tr. at 758. The ALJ also found that despite Ms. Barnes' claims that her debilitating pain requires use of a walker or a wheelchair, she never used either during the hearing. Tr. at 68. After considering this evidence, the ALJ's decision to give "little weight" to the opinions of Dr. Hensley and Dr. Kawak is reasonably supported in the evidence and sufficiently explained. Tr. at 68. While Ms. Barnes has provided extensive citations explaining the importance of particular elements of Dr. Hensley's and Dr. Kawak's testimonies, she has not provided any evidence to suggest that their testimonies should be given greater credibility.

**B.     The ALJ sufficiently articulated his reason for concluding that Ms. Barnes is capable of performing her past relevant work.**

Ms. Barnes also argues that the ALJ committed a reversible error when he concluded that Ms. Barnes could return to her past work without providing a "particularized analysis" of her previous jobs. Dkt. 14 at 19. Ms. Barnes correctly points out that an ALJ "cannot describe a claimant's job in a generic way . . . and conclude, on the basis of the claimant's residual capacity, that she can return to her previous work." *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991). Instead, the AJL must inquire into the specific duties of the applicant's past work and determine if the applicant is capable of performing those specific job duties. *Ruiz v. Barnhart*, 518 F. Supp. 2d 1007, 1022 (N.D. Ill. 2006).

In his analysis on this matter the AJL found that Ms. Barnes could perform her past work as an accounts receivable bookkeeper and a credit collection manager. Tr. at 69. He supported this conclusion by stating that the "vocation expert confirmed that the accounts

receivable bookkeeper and credit and collection manager jobs do not require the performance of work-related activities precluded by the residual functional capacity limitations." Tr. at 69. He further stated that the vocational expert's testimony was consistent with the *Dictionary of Occupational Titles* and "credible, persuasive, and uncontradicted." Tr. at 69.

While this opinion may not contain a detailed analysis of Ms. Barnes' past work, the ALJ sufficiently articulated his reason for reaching this conclusion by explaining that he was relying on the vocational expert's opinion. The Court finds that in this case, relying on the vocational expert's testimony and classification within the *Dictionary of Occupational Titles* satisfies the ALJ's requirement to explain a finding regarding an applicant's ability to perform past relevant work. *See e.g.*, *Karger v. Astrue*, 566 F. Supp. 2d 897, 909 (W.D. Wis. 2008); *Markgraff v. Barnhart*, 03 C 50559, 2004 WL 2418298,* at 15 (N.D. Ill. Oct. 27, 2004) *report and recommendation adopted*, 03 C 50559, 2004 WL 2967035 (N.D. Ill. Nov. 24, 2004) (stating "this court finds that the ALJ's reliance on the Vocational Expert's and Plaintiff's testimony in finding that Plaintiff could return to past work as it exists in the economy reasonable"). Further, the ALJ did ask Ms. Barnes if lifting was involved in her past work and the vocational expert noted that Ms. Barnes performed her past work at a medium level, although it is classified as sedentary.

In *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984), the primary case on which Ms. Barnes relies, the court found the ALJ's explanation unsatisfactory because they were unable to ascertain whether an ALJ examined the demands of the applicants' former work and compared them with the applicants' present physical capacity. Such confusion is not present here. In this case the ALJ accounted for the demands of Ms. Barnes' previous work because the vocational expert was apprised of these demands during the hearing. Tr. at

45-46. The vocational expert then unambiguously testified that Ms. Barnes' former work was classified at the sedentary level, that it included lifting restrictions of ten pounds occasionally and less than ten pounds frequently, and that Ms. Barnes could meet the demands in her present capacity. Tr. at 46. Ms. Barnes' argument insists on a legal requirement that an ALJ should thoroughly explain the duties of an applicant's past work without relying on an expert's testimony in making this determination. This proposition is impractical considering an ALJ frequently relies on the testimony of the vocational expert when determining if an applicant can return to past relevant work. Instead, this Court holds that the ALJ's opinion satisfies the standard of *Strittmatter* and its progeny by citing the testimony of the vocational expert who was fully apprised of Ms. Barnes' past work and provided a particularized analysis of her abilities to complete this work.

Even if the ALJ were to find that Ms. Barnes could not perform her past work's specific duties given the lifting involved at the medium level, the ALJ further found that she could perform the jobs "as generally performed in the national economy," which is at the sedentary exertion level. Tr. at 69. The ALJ's determination was not in error.

## IV. CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the Commissioner's decision denying benefits. Ms. Barnes' appeal is **DENIED**.

**SO ORDERED.**

Date: 03/07/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

13

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov